CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 08 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADRIAN MENDOZA SANCHEZ, | ) | CASE NO. 7:07CV00432 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Respondent. | ) | U.S. MAGISTRATE JUDGE |

On September 10, 2007, Adrian Mendoza Sanchez ("petitioner") filed a motion to vacate, set aside or correct his sentence ("petition") pursuant to 28 U.S.C. § 2255. The United States moved to dismiss on November 23, 2007. On January 15, 2008, the presiding District Judge took the motion to dismiss under advisement and referred the case to the undersigned, under the authority of 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing and render a report setting forth findings of fact, conclusions of law, and a recommended disposition on the timeliness of petitioner's claim that his counsel failed to file a direct appeal despite being requested to do so. According to the court's Memorandum Opinion entered in support of the order of reference, the presiding District Judge seeks an answer to two questions, namely: (1) whether petitioner "requested counsel to file a direct appeal;" and (2) whether petitioner "could not have discovered counsel's failure to file an appeal, through the exercise of due diligence," within the period in which he could file his § 2255 petition. (Dkt. No. 7, p. 3.) For the reasons that follow, the undersigned hereby RECOMMENDS that an Order enter GRANTING the government's motion to dismiss to the extent it asserts that petitioner's claims are time-barred and not tolled under the decisional authorities heretofore cited by the presiding District Judge.

## FACTUAL BACKGROUND

On February 9, 2006, a guilty plea hearing under Federal Criminal Procedure Code Rule 11 was conducted before a United States Magistrate Judge. *United States v. Adrian Mendoza Sanchez*, Criminal No. 5:05CR00038-1. In accordance with a plea agreement, petitioner entered a plea of guilty to Count One charging him with conspiracy to distribute 500 or more grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 846.[1] Under that plea agreement, petitioner waived his right to a jury trial, his right to appeal his sentence and the application of the sentencing guidelines, stating, "**I will not appeal.**" (United States' Response To Petitioner's Motion For Relief, etc. ("Response"), Attach. 4, ¶ 9.) He further waived his right to collaterally attack the judgment or sentence imposed by the court. (Response, Attach. 4, ¶ 10.) The Magistrate Judge recommended the presiding court accept the guilty plea. The presiding District Judge adopted the Magistrate Judge's Report and Recommendation and accepted petitioner's plea of guilty to Count One. On May 3, 2006, petitioner was sentenced to 147 months imprisonment and five years of supervised release.

At the conclusion of the sentencing proceeding, the presiding court informed petitioner as follows:

> Mr. Sanchez, I tell you that you've waived your right to appeal your sentence by virtue of your plea agreement with the United States and that waiver is binding unless the sentence exceeds the statutory maximum or is based on some constitutionally impermissible factor. If you undertake to appeal despite your waiver, you may lose the benefits of your plea agreement and they've been substantial.

---

[1] The record of those proceedings has been filed with this court.

> To the extent the right of appeal does exists, I tell you a person unable to pay the cost of an appeal may apply for leave to appeal without pre-payment of those costs.
>
> Any notice of appeal must be must be filed within ten days of the entry of judgment or within ten days of the notice of appeal filed by the United States.

(Transcript of Sentencing Hearing, p. 23.)

Judgment was entered on May 5, 2006. At all times relevant to these proceedings, petitioner was represented by CJA counsel, Gregory W. Bowman, Esq.

On September 10, 2007, petitioner, *pro se,* filed a motion for relief pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel because, *inter alia,* counsel failed to file an appeal despite being requested to do so. After addressing the legal issue presented, the presiding District Judge took under advisement the government's motion to dismiss the petition as time-barred and referred the case to the undersigned to conduct evidentiary proceedings related to the timeliness of petitioner's claim. Upon reference of the case to the undersigned, Andrea Harris, Esq., Public Defender, was appointed to represent petitioner in these proceedings. An evidentiary hearing was held on April 29, 2008.

## EVIDENCE PRESENTED

Only two witnesses testified, and their evidence is summarized below.

### ADRIAN MENDOZA SANCHEZ

Petitioner testified that he is of Mexican descent and that Spanish is his first language. He also testified that he is able to both write and speak "some" English. Petitioner revealed that whenever he met with Bowman about the case, he was in custody, and there always was a Spanish interpreter present. Petitioner acknowledged he knew that his plea agreement included a

3

provision waiving his right to appeal or collaterally attack his sentence. He testified that he was confused by the statements made by the District Judge at the conclusion of his sentencing hearing informing him that he had ten days to file an appeal.

According to petitioner, he met with Bowman in the Marshal Service's holding cell immediately after his sentencing hearing. Petitioner testified he had a conversation in English with Bowman in which he asked Bowman "to check to see if [he] could get less time." Petitioner informed the court that he had no other meetings or conversations with Bowman, and he thought that Bowman had filed an appeal on his behalf.

Petitioner further identified certain written correspondence from him to Bowman. (Pl.'s Exhibits 1-5.)[2] Exhibits 1 and 2 addressed his meeting with federal agents in an attempt to obtain a reduction in his sentence by providing substantial assistance, though petitioner could not recall whether he received a copy of the judgment order from Bowman as Exhibit 1 suggests. He did recall receiving a letter from the court with information about filing an appeal within ten days, though this letter was not offered into evidence at the hearing. Petitioner requested and received from Bowman's office a copy of his file materials. (Pl.'s Exhibit 3.) He did not learn that Bowman had not filed an appeal until he began discussing his case with another inmate, a jailhouse lawyer, after his transfer to F.C.I. Petersburg.

On cross examination, petitioner acknowledged that he had received a copy of the transcript from his sentencing hearing as part of the materials sent to him when the government responded to the instant Petition. Petitioner maintained that the sentencing court's advice to him

---

[2]Petitioner testified that when Bowman sent him letters, he provided petitioner with copies in English and Spanish.

4

was confusing, and that he has remained upset that his sentence was greater than his co-defendants. Petitioner acknowledged that Section 9 of his plea agreement provides for waiver of his right to appeal his sentence, but he insisted that the judge's statements at his sentencing hearing led him to believe he had a right to appeal. Petitioner also indicated that, in his brief post-sentencing discussion with Bowman in the holding cell, Bowman told him that he felt "alright" about the outcome, that he had done "the best" he could have done, and that petitioner had ten days within which to file an appeal.

Petitioner reiterated on cross examination that his chief complaint was, and apparently remains, the sentence he received in comparison to that which his co-defendants received. He conceded that the objection raised, through Bowman, to matters related in the presentence report, which incidently was the only objection he made prior to sentencing, was sustained by the District Judge. Petitioner further conceded that he has never challenged the government's assertion of his role in offense, and he confessed that he does not now desire exposure to an increased sentence if sentencing is reopened. He further acknowledged that there was no mention of an appeal in any correspondence he sent to Bowman. When pressed, petitioner admitted that the entire subject of an appeal arose for the first time during his conversations with a jail house lawyer whose assistance petitioner sought in preparing the Petition.[3] His explanation for such a delay remained that he "thought" an appeal had been pending all along, and that he had been told that appeals take a long time to process.

Petitioner testified that he had only limited access to the telephone while at the Central

---

[3] A significant number of questions were posed by counsel for the government challenging the veracity of petitioner's allegations in his initial pleading which were filed under penalty of perjury.

5

Virginia Regional Jail ("CVRJ") where he was held prior to his transfer to F.C.I. Petersburg. Petitioner also testified that he never telephoned Bowman about an appeal either while at CVRJ or at F.C.I. Petersburg.

**GREGORY W. BOWMAN, ESQ.**

Bowman testified that he was admitted to practice before this court in 1993 or 1994, that he has served as both retained and appointed counsel in criminal cases, and that he was assigned to represent petitioner in the underlying criminal proceedings. Bowman stated that it is not his usual practice to have substantive conversations with defendants in the Marshal Service's holding cell after a sentencing, and he did not specifically remember any conversation with Petitioner in the holding cell after his sentencing hearing. In addition, Bowman could not recall having any conversations in English with the petitioner without the presence of an interpreter, except for a casual "hello." Bowman stated that whenever any substantive matters were discussed, an interpreter always was present.

Categorically, Bowman testified that petitioner never asked him to file an appeal. According to Bowman, he routinely consults with the defendants he represents about their appellate rights before entry of a plea and before sentencing. Whether he would repeat this conversation with the defendant after sentencing depended on the circumstances. Bowman did not recall having any conversation with petitioner about an appeal after sentencing. Bowman also stated that if petitioner, on his own, had mentioned an appeal at any time, that would have stood out in his memory. This is so because, at the very least, he would have informed petitioner of any consequences to his appealing under the plea agreement, and he would have counseled him about the merit of any issues. Bowman testified that if petitioner had insisted on filing an appeal,

6

he would have filed an appeal, despite his counseling against it.

Bowman recalled that all post-sentencing correspondence and communication with petitioner centered on his cooperation with federal agents in an effort to secure a reduction in his sentence. According to Bowman, there was no real strategy to pursue in the case since petitioner already had told authorities "what had happened." Bowman inferred that it simply was too late to do much to help petitioner's situation except to continue cooperating with the hope of achieving a later reduction in his sentence. Again, Bowman categorically testified that petitioner never mentioned an appeal during this entire post-sentencing process. Bowman testified that if petitioner had telephoned his office for any reason, including to discuss filing an appeal or the status of his appeal, Bowman or his office staff would have accepted the collect call.[4]

Bowman further testified that his only contact with petitioner after sentencing was through written correspondence. Bowman stated that upon request by petitioner, his staff forwarded the file contents of his file to him. Bowman stated that if petitioner had mentioned anything to anyone in his office about an appeal, that information would have been brought to his attention, and he would have acted on it.[5]

### APPLICABLE LAW, FINDINGS, CONCLUSIONS AND RECOMMENDATION

It is undisputed that the judgment of the court was entered on May 5, 2006 and

---

[4]Bowman indicated that he has a very small office operation, and that he and his staff accept collect calls from incarcerated clients. It is his office practice to accept calls, and if he is unavailable when such a call is received, a message is passed along to him. He then follows up by contacting the client.

[5]Bowman actually stated something to the effect of "it better had been" brought to his attention. However, it should be remembered that petitioner does not claim here that he communicated his request to appeal to anyone other than Bowman, and then only on one occasion in the holding cell immediately after his sentencing.

7

petitioner's § 2255 action was filed on September 10, 2007, more than one year from entry of judgment. As framed by the presiding District Judge, in order to prevail against the government's motion to dismiss under the principle of equitable tolling, the petitioner has the burden of proving by a preponderance of the evidence: (1) that he requested counsel to file a direct appeal; and (2) that he could not have discovered counsel's failure to appeal, through the exercise of due diligence, until sometime within the one year preceding his filing of this action. (Memorandum Opinion at 3) (citing *United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)).

The undersigned does not find that petitioner proved by a preponderance of the evidence that he made a request of counsel to file a direct appeal. Assuming the court fully credits petitioner's testimony, it would be true that he and Bowman met briefly in the holding cell after sentencing and had a conversation in English without the aid of an interpreter. As related by petitioner, "I asked [Bowman] to check and see if I could get less time." There were no other meetings or conversations about an appeal after that. On its face, this statement to counsel is a far cry from asking him to pursue a direct appeal. Given the context of petitioner's plea agreement, his pre-plea and pre-sentencing meetings with Bowman, and his desire to pursue a post-sentencing reduction by providing substantial assistance, there are insufficient facts upon which the undersigned could conclude petitioner asked Bowman to file an appeal. Put another way, it is just as likely, if not more so, that petitioner's brief conversation in English with Bowman centered on post-judgment efforts looking with anticipation of a later sentence reduction than it did on appeal.

It also is difficult for the undersigned to conclude on the evidence before the court that

8

Bowman actually would have engaged in any substantive conversation with his client in the absence of an interpreter. Bowman's testimony in this regard is credible and corroborated to some extent by petitioner's own evidence. Petitioner acknowledged that whenever he met with Bowman, except for that one brief moment in the holding cell after his sentencing hearing, an interpreter was always present. Also, petitioner did not challenge Bowman's evidence that all his written communication to Petitioner was sent both in English and Spanish.

Nor can the undersigned fathom the reasonableness of petitioner's proffered belief that an appeal was pending all the while when: (1) no written correspondence mentions the pendency of an appeal; (2) petitioner had access to Bowman through the mail and by telephone to make a clear inquiry about an appeal; (3) the exhibits petitioner offered at the evidentiary hearing show his overriding concern, at least until he met with a jailhouse lawyer at F.C.I. Petersburg, was directed toward cooperating with federal agents in an effort to secure a motion by the government to reduce his sentence; and (4) the entire notion of an appeal did not surface until petitioner's encounter with the jailhouse lawyer before filing the instant § 2255 petition.

The evidence is more clear but no more helpful to petitioner on the second question, namely whether he could not have discovered, in a timely manner under § 2255, that no appeal was filed through the exercise of due diligence. Frankly, it cuts against both the undersigned's experience and reason to believe that a reasonable person in petitioner's circumstances simply would have sat idly by for a year or more without making inquiry about what he thought was a pending appeal. At best, petitioner's explanation is weak, and, at worst, it is not borne out by the weight of the evidence.

The circumstances demonstrate to the undersigned that the entire notion of an appeal was

not even on petitioner's mind until his meeting with the F.C.I. Petersburg jailhouse lawyer. The undersigned infers from the circumstances that the subject of an appeal likely arose during the interview process prior to filing his Petition. More pertinent to the issue referred here by the District Judge, the undersigned finds by the preponderance of the evidence that petitioner had numerous and ample opportunities to communicate with Bowman by telephone and by letter about any appeal prior to the expiration of the one-year period, but he failed to do so. Bowman's routine practice was to receive collect calls from incarcerated clients, and certainly the evidence here shows he or his office staff communicated with petitioner in written form both to inform him of matters and to respond to the request for his file. Conspicuously missing from any of correspondence from petitioner or Bowman is a hint about an appeal. This is an important omission because both experience and reason tell the undersigned that those issues are reasonably expected to loom large on the minds, and typically preoccupy, those serving a long federal sentence.

In short, had petitioner exercised due diligence within the one-year period pertinent to this action, he most certainly could have, and likely would have, learned from Bowman, himself, that no appeal, whether requested or not, was taken. The excuses offered here were not beyond his control, nor were they extraordinary. Petitioner did not exercise due diligence.

## RECOMMENDATION

For the foregoing reasons, the undersigned hereby RECOMMENDS that an Order enter GRANTING the government's motion to dismiss to the extent it asserts petitioner's claims are time-barred and not tolled under the decisional authorities heretofore cited by the presiding District Judge.

10

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U. S. Magistrate Judge

May 8, 2008
Date