CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUN 2 0 2008

JOHN F. CORCORAN, CLERK
BY: /s/ 
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ADRIAN MENDOZA SANCHEZ, ) | |
|     Petitioner, ) | Civil Action No. 7:07-cv-00432 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. Glen E. Conrad |
|     Respondent. ) | United States District Judge |

Petitioner Adrian Mendoza Sanchez, Federal Register No. 11723-084, filed this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, challenging the sentence he received for conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine. Petitioner raised several claims of ineffective assistance of counsel, including a claim that counsel failed to file a direct appeal despite having been requested to do so. Respondent filed a motion to dismiss arguing that petitioner's claims are time-barred.

The court determined that petitioner's 28 U.S.C. § 2255 motion may be timely if petitioner did, indeed, request counsel to file a direct appeal, and petitioner could not have timely discovered, through the exercise of due diligence, that counsel had failed to file an appeal. Because the court was unable to determine upon the record as it then existed whether counsel failed to file a requested appeal and, thus, whether circumstances warranted equitable tolling of the limitations period for filing a § 2255 motion, the court referred the matter to a magistrate judge for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B). The case is presently before the court upon consideration of the report and recommendation of United States Magistrate Judge B. Waugh Crigler, and petitioner's objections to the magistrate judge's findings. For the reasons that follow, the court will overrule petitioner's objections, will adopt the magistrate judge's report and recommendations, and will dismiss the petition as untimely. Accordingly, the court will grant respondent's motion to dismiss.

# I.

On September 7, 2005, Sanchez and three other defendants were charged in a three-count indictment returned by a grand jury in the Western District of Virginia. <u>United States v. Adrian Mendoza Sanchez</u>, Criminal Case No. 5:05-cr-00038-1. Count One charged Sanchez with conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. On February 9, 2006, a guilty plea hearing was conducted before a United States Magistrate Judge. In accordance with a plea agreement, petitioner pled guilty to Count One. Pursuant to the plea agreement, petitioner waived his right to a jury trial, his right to appeal his sentence, and his right to appeal the application of the sentencing guidelines factors. The pertinent paragraph of the plea agreement states, "I agree that after my full and fair sentencing hearing, **I will not then appeal my sentence**." (Emphasis in original.) Additionally, petitioner waived his right to collaterally attack the judgment or sentence imposed by the court. The magistrate judge recommended that the court accept the guilty plea.

The undersigned adopted the magistrate judge's report and recommendation, and accepted petitioner's plea of guilty to Count One. On May 3, 2006, petitioner was sentenced to a term of imprisonment of 147 months and five years of supervised release. At the conclusion of the sentencing proceeding, the court informed petitioner as follows:

> Mr. Sanchez, I tell you that you've waived your right to appeal your sentence by virtue of your plea agreement with the United States and that waiver is binding unless the sentence exceeds the statutory maximum or is based on some constitutionally impermissible factor. If you undertake to appeal despite your waiver, you may lose the benefits of your plea agreement and they've been substantial.
>
> To the extent the right of appeal does exist, I tell you a person unable to pay the cost of an appeal may apply for leave to appeal without pre-payment of those costs.

2

> Any notice of appeal must be filed within ten days of the entry of judgment or within ten days of the notice of appeal filed by the United States.
>
> If requested, the clerk will prepare and file a notice of appeal on your behalf.

The judgment was entered on May 5, 2006. Petitioner did not lodge a direct appeal of his conviction or sentence. At all times relevant to the proceedings in petitioner's criminal case, petitioner was represented by appointed counsel, Gregory W. Bowman, Esq.

Petitioner executed the instant pro se § 2255 motion on August 31, 2007, and it was entered upon the docket on September 10, 2007. Sanchez alleged, inter alia, that counsel was ineffective for failing to file an appeal despite having been requested to do so. Respondent filed a motion to dismiss the petition as time-barred. The court, finding that it was unable upon consideration of the existing record to resolve the issue of whether counsel was ineffective in filing an appeal, took respondent's motion under advisement and referred the case to the magistrate judge to conduct evidentiary proceedings related to the timeliness of petitioner's claim. Upon reference of the case to the magistrate judge, counsel was appointed to represent petitioner.

Only two witnesses, petitioner and Mr. Bowman, testified at the evidentiary hearing, which was held on April 29, 2008. Petitioner testified that he is of Mexican descent and that Spanish is his first language. He stated that he is able to both write and speak "some" English. At all times when petitioner met with Bowman, petitioner was in custody, and an interpreter was always present. Petitioner acknowledged that he was aware that his plea agreement included a waiver of his right to appeal or collaterally attack his sentence. He testified that he was confused by the court's statements, made at the conclusion of the sentencing hearing, informing him that he had ten days to file an appeal.

3

Petitioner stated that he met with Bowman in the Marshal Service's holding cell immediately after his sentencing hearing. According to petitioner, he asked Bowman "to check and see if [he] could get less time." Petitioner testified that he had no other meetings or conversations with Bowman, and that he believed Bowman had filed an appeal on his behalf.

Petitioner testified regarding five documents, entered into the record as exhibits, of written correspondence between him and Bowman. Three of these letters were from Bowman to petitioner, and two were from petitioner to Bowman. Petitioner testified that, when Bowman sent him letters, he provided petitioner with copies in both English and Spanish. Two of the letters from Bowman, dated May 9 and 11, 2006, dealt predominantly with petitioner's meeting with federal agents in an attempt to obtain a reduction in his sentence by providing substantial assistance. The letter of May 9, 2006, also stated that a copy of the judgment order in petitioner's case was enclosed. Petitioner testified that he could not recall whether he received a copy of the judgment order; however, a letter, dated May 23, 2006, from petitioner to Bowman, acknowledges having received the judgment order in his case.[1] Petitioner also recalled receiving a letter, not offered into evidence at the hearing, from the court with information about filing an appeal within ten days. Petitioner testified that he requested and received a copy of his file materials from Bowman's office, as indicated by the third letter, dated July 20, 2007, from Bowman to petitioner. Plaintiff stated that he did not learn that Bowman had not filed an appeal until he began discussing the case with another inmate, a "jailhouse

---

[1] Two letters from Sanchez to Bowman were introduced into evidence. The first letter, dated May 23, 2006, acknowledged the receipt of the judgment order, discussed the impending conversation with federal agents, inquired about a letter and form petitioner had received from the "U.S. Department of Justice Immigration and Naturalization Service," and requested information regarding the Bureau of Prisons. The letter expressed petitioner's gratitude to Bowman and concluded, "God bless you." The second letter from petitioner to Bowman, received by Bowman on August 4, 2006, states that petitioner had learned that he was being moved to FCI Petersburg, and inquires whether Bowman has spoken further with federal agents regarding petitioner's case.

4

lawyer" petitioner met upon his transfer to the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg").

On cross-examination, petitioner acknowledged that he had received a copy of the transcript of his sentencing hearing as part of the materials sent to him when the government responded to the instant petition. Petitioner testified that the sentencing court's advice to him was confusing, and that he is upset that he received a sentence greater than his co-defendants. Petitioner acknowledged that section 9 of his plea agreement waives his right to appeal, but insisted that the court's statements at the sentencing hearing led him to believe he had a right to appeal. Petitioner testified that, in a brief discussion in the holding cell after the sentencing, Bowman stated that he felt "all right" about the outcome, that he had done "the best" he could have done, and that petitioner had ten days within which to file an appeal.

Petitioner reiterated on cross-examination that his chief complaint is that the sentence he received is greater than those received by his co-defendants. He conceded that the objection Bowman raised regarding matters related in the presentence report – the only objection raised prior to sentencing – was sustained by the court. Petitioner further conceded that he has never challenged the government's characterization of his role in the offense, and he confessed that he does not now desire exposure to an increased sentence if sentencing is reopened. He further acknowledged that there was no mention of an appeal in any correspondence he sent to Bowman. When pressed, petitioner admitted that the entire subject of an appeal arose for the first time during his conversations with a "jailhouse lawyer" at FCI Petersburg.[2] Regarding his failure to lodge any

---

[2] As the report and recommendation notes, counsel for respondent challenged the veracity of a number of petitioner's allegations in his initial pleading, prepared by the "jailhouse lawyer," which were filed under penalty
(continued...)

5

inquiries about an appeal prior to filing the instant 28 U.S.C. § 2255 motion, petitioner explained that he "thought" an appeal had been pending all along, and that he had been told that appeals take a long time to process. Petitioner testified that he had limited access to the telephone while he was held at the Central Virginia Regional Jail ("CVRJ"), prior to his transfer to FCI Petersburg. Petitioner further testified that he never telephoned Bowman about an appeal or any other matter while at CVRJ or FCI Petersburg.

Bowman testified that he was admitted to practice before this court in 1993 or 1994, that he has served as retained and appointed counsel in criminal cases, and that he was appointed to represent petitioner in the criminal proceedings underlying the instant § 2255 motion. According to Bowman, it is not his usual practice to engage in substantive conversations with defendants in the Marshal Service's holding cell after a sentencing, and he did not specifically remember any conversation with petitioner in the holding cell after his sentencing hearing. Additionally, Bowman maintained that, whenever he discussed any substantive matters with petitioner, an interpreter was always present, and that he never had any conversations in English with petitioner without the presence of an interpreter, with the exception of a casual "Hello."

Bowman testified that petitioner never asked him to file an appeal. Bowman explained that he routinely consults with a defendant regarding appellate rights before the entry of a plea and before sentencing. According to Bowman, whether he would repeat this conversation after sentencing depended upon the circumstances. Bowman did not recall having any conversation regarding an appeal with petitioner after sentencing. Bowman testified that, had petitioner mentioned an appeal

---

²(...continued)
of perjury.

at any time, that occasion would have stood out in his memory; he stated that, at the very least, he would have informed petitioner of the consequences of an appeal, pursuant to the plea agreement, and he would have counseled petitioner regarding the possible merits of the issues. Bowman further testified that, had petitioner insisted on filing an appeal, he would have filed the appeal, despite having counseled against it.

Bowman testified that all of his post-sentencing correspondence and communication with petitioner focused on petitioner's cooperation with federal agents in an effort to secure a reduction in his sentence via a substantial assistance motion. According to Bowman, there was no real strategy to pursue, given that petitioner had already told authorities "what had happened," and Bowman inferred that it was too late to do much to help petitioner's situation except to continue cooperating with federal agents with the hope of later obtaining a reduction in the sentence. Bowman categorically denied that petitioner had ever requested that he file an appeal, or even mentioned an appeal during any of their post-sentencing communications.

Bowman also testified that he has a very small office operation; that it is his office practice that he and his staff accept collect calls from incarcerated clients; and that, if Bowman is unavailable when one of these calls is received, a message is taken and he follows up by contacting the client. Bowman testified that, had petitioner telephoned his office for any reason, including to discuss filing an appeal or the status of any appeal that he believed had been filed, Bowman or his office staff would have taken the call or accepted a collect call.

Bowman testified that his only contact with petitioner, post-sentencing, was through written correspondence, which the court has already reviewed and summarized. Bowman stated that, upon petitioner's request, the contents of petitioner's file were forwarded to petitioner by Bowman's office

7

staff. Even though petitioner does not claim to have communicated his request to anyone other than Bowman, and then only on one occasion in the holding cell immediately after his sentencing, Bowman testified that, had petitioner mentioned anything regarding an appeal to anyone in his office, that information would have been brought to his attention and he would have acted upon it.

Based on the evidentiary hearing testimony and the transcripts of petitioner's sentencing and guilty plea hearings, the magistrate judge concluded that petitioner did not meet his burden of proving that Bowman was ineffective for failing to file a notice of appeal. The magistrate judge recommended that respondent's motion to dismiss be granted, finding that petitioner failed to present any credible evidence suggesting that he instructed counsel to file a notice of appeal or that he could not have discovered, through the exercise of due diligence, counsel's failure to appeal; therefore, the instant motion pursuant to 28 U.S.C. § 2255 is untimely because it was filed more than one year from entry of the judgment in petitioner's criminal case.

In support of his findings regarding petitioner's claim that he requested counsel to file a direct appeal, the magistrate judge drew the following conclusions. Assuming the truth of petitioner's contentions regarding a conversation in the holding cell, petitioner's request that Bowman "check and see if [he] could get less time" is not a request to pursue a direct appeal, and the context of the plea agreement, petitioner's pre-plea and post-sentencing meetings with Bowman, and petitioner's clearly expressed desire to pursue a post-sentencing reduction by providing substantial assistance, suggest that any alleged conversation in English that petitioner had with Bowman focused on post-judgment efforts to obtain a sentence reduction, not a direct appeal. Additionally, the magistrate judge concluded that Bowman's testimony that he did not engage in a substantive conversation with petitioner without an interpreter present is not only credible, but is corroborated to some degree by

8

petitioner's own acknowledgment that an interpreter was always present when he met with Bowman, save for this one alleged conversation in the holding cell, and petitioner did not challenge Bowman's evidence that all of his written communication to petitioner was transmitted in both English and Spanish.

Regarding the question whether petitioner could have discovered in a timely manner, through the exercise of due diligence, that no appeal had been filed, the magistrate judge found in the first instance that petitioner's contention that he believed an appeal was pending for some indeterminate period of time was not credible. The magistrate judge based this conclusion on the following: the absence of any mention of an appeal in the record of written correspondence between petitioner and counsel; the ready accessability of avenues of communication between petitioner and counsel; the finding that petitioner's primary concern, until he met a "jailhouse lawyer" at FCI Petersburg, was directed toward cooperating with federal agents in an effort to secure a substantial assistance motion by the government to reduce his sentence; and the finding that petitioner did not form the notion of filing an appeal until his encounter with the "jailhouse lawyer" before filing the instant petition. Furthermore, the magistrate judge determined that a reasonable person in petitioner's circumstances would not have "sat idly by for a year or more" without lodging any inquiry regarding an allegedly pending appeal. Accordingly, the magistrate judge concluded that "petitioner did not exercise due diligence" because, "had petitioner exercised due diligence within the one-year period pertinent to this action, he most certainly could have, and likely would have, learned from Bowman, himself, that no appeal, whether requested or not, was taken. The excuses offered here were not beyond his control, nor were they extraordinary."

9

## II.

By counsel, petitioner timely lodged the following objections to the magistrate judge's report and recommendation:

- Petitioner maintains that he met his burden of showing that he reasonably demonstrated to counsel that he was interested in appealing and that counsel did not meet his duty to consult with petitioner regarding his right to appeal.

- Petitioner maintains that he met his burden of showing that he could not have discovered in a timely manner that no appeal was filed because he showed that he was incarcerated and counsel did not respond to inquiries petitioner made concerning his case.

In accordance with 28 U.S.C. § 636(b)(1), the court shall conduct a de novo review of the magistrate judge's findings to which petitioner has specifically objected.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show, first, that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This is the test applicable in situations where, as here, trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, petitioner must prove that counsel was ineffective, and that an appeal would have been filed had it not been for the ineffectiveness. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S.

10

at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel has not consulted with defendant, the court must then determine whether counsel's failure to consult with defendant itself constitutes deficient performance. Id.

Not every failure to consult results in constitutionally deficient performance. Id. at 479. Rather, counsel only has a constitutionally imposed duty to consult where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. Nonetheless, despite the fact that a defendant pleaded guilty, the court must consider such factors as whether the defendant received the

11

sentence bargained for as part of the plea and whether the plea agreement waived his right to appeal. Id.

### A.

The court will overrule petitioner's first objection. The court agrees with the magistrate judge that, assuming the court fully credits petitioner's testimony regarding an alleged conversation in English, absent the presence of an interpreter, in the holding cell post-sentencing, petitioner's statement to counsel that he "asked [Bowman] to check and see if I could get less time" is not a request for a direct appeal. The court further agrees that the preponderance of the evidence does not favor petitioner's contention, given the context of the plea agreement, the uncontroverted facts of petitioner's pre-plea and pre-sentencing meetings with Bowman, and the written record of correspondence between petitioner and counsel, which makes no reference to the possibility of filing an appeal, but rather indicates that petitioner hoped to reduce his sentence by cooperating with the government. Moreover, the court agrees that it is difficult to believe that counsel engaged in any substantive conversation with his client in the absence of an interpreter, given the overwhelming weight of the evidence that all communications between counsel and petitioner were presented in bilingual format to aid petitioner's understanding.[3]

It is clear upon consideration of the record that, following sentencing, Bowman facilitated petitioner's meeting with federal agents in the hope of earning a sentence reduction by continuing to assist the government during his incarceration. Petitioner's effort to assist the government in hopes of obtaining a reduction in his sentence is at odds with his present contention that he intended

---

[3] The court adds that it is plain that petitioner's ability to communicate in English is limited. For that reason, an interpreter has been provided for him for every one of his appearances in court, in both his criminal case and the instant action.

12

to appeal his conviction and sentencing determination. Moreover, pursuant to the written plea agreement, petitioner received substantial benefits as a result of his guilty plea, including the opportunity to earn a substantial assistance motion from the government, credit for the acceptance of responsibility, and the government's agreement to recommend a sentence of incarceration between the low end and the middle of the applicable guidelines range.[4] Had petitioner appealed his sentence, he faced losing these substantial benefits, which he received under the terms of his plea agreement, and any further opportunity to earn a substantial assistance motion. The court finds that a defendant in petitioner's position would not have forfeited these benefits to file a baseless appeal.

Because the court finds that petitioner did not request counsel to file an appeal, the next issue the court must determine is whether counsel consulted with petitioner regarding the advantages and disadvantages of filing an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. In this case, although Bowman discussed the plea agreement's waiver provisions with petitioner, it appears that, after the sentence was imposed, he did not fully discuss the advantages and disadvantages of appealing the sentence. Therefore, the court must further inquire whether counsel had the affirmative duty to consult. Flores-Ortega, 528 U.S. at 480. An affirmative duty to consult arises when either (1) any rational defendant would want to appeal (for example, where there is a

---

[4] Petitioner's plea agreement acknowledges that the maximum statutory penalty for the charge of conspiring to distribute 500 or more grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846, "is a fine of $4,000,000 and life imprisonment, and a period of supervised release. The statutory minimum sentence for this sentence is ten years in prison." Petitioner received 147 months imprisonment, i.e., 12 years and 3 months, and 5 years of supervised release. The plea agreement also states:

> I understand that any attempt to deny that I committed the crimes to which I have agreed to plead guilty, any attempt to withdraw my guilty plea, the commission of any new crimes, or any other breach of this Agreement, including my failure to pay my mandatory special assessment, will nullify the United States agreement that I should receive credit for acceptance of responsibility.

13

non-frivolous ground for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. The court has already resolved the latter question and, based on the waiver in his plea agreement, the only claims petitioner could raise on appeal, despite the waiver, were that the sentence was imposed in excess of the maximum penalty allowed or was based on the consideration of a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 218 n.2 (4th Cir. 2005) (citing United States v. Marin, 961 F.2d 493 (4th Cir. 1992)). As neither of these issues have been raised, and it is clear that petitioner's sentence does not exceed the statutory maximum, the court finds that petitioner had no non-frivolous grounds on which to base his appeal.

Moreover, as the court has already observed, in exchange for his guilty plea and waiver of his rights to appeal and collaterally attack his sentence, petitioner received significant benefits for his bargain. In light of petitioner's waiver of his right to appeal any sentencing guideline factors, the absence of any non-frivolous ground for appeal, the significant benefit to petitioner's plea bargain, and the fact that the court clearly apprised petitioner of his right to appeal, the facts of this case fall squarely in the examples cited by the court in Flores-Oretega where no further consultation by counsel is required. Flores-Oretega, 528 U.S. at 479-80. Consequently, the court finds that in this case, a rational defendant would not want to appeal and that petitioner did not reasonably demonstrate to counsel that he was interested in filing an appeal. Therefore, counsel did not have an affirmative duty to consult with petitioner. Accordingly, petitioner has shown neither deficient performance by counsel nor prejudice; thus, this claim must fail. Strickland, 466 U.S. at 669.

The evidence indicates that, aside from discussing the plea agreement's waiver of the right to appeal, counsel and petitioner did not further discuss the possibility of appealing the sentence;

however, this does not amount to constitutionally deficient performance, because there is no reason to believe that a reasonable defendant in petitioner's circumstances would have wanted to appeal and petitioner did not demonstrate any interest in appealing. Accordingly, the court concludes that Bowman was not constitutionally deficient in failing to consult with petitioner about an appeal following the sentencing hearing. See Zaldivar-Fuentes v. United States of America, No. 7:06cv00465, 2007 WL 473993, at *4 (W.D. Va. Feb. 7, 2007) (holding that where defendant entered a plea agreement waiving his right to appeal any sentencing guideline issue, there was no apparent non-frivolous ground for appeal, the court apprised defendant of the right to appeal, and defendant did not express an interest in appealing, counsel had no duty to consult); Barksdale v. United States of America, No. 2:05cv00245, 2006 WL 1117813, at *9-10 (E.D. Va. Apr. 26, 2006) (finding no duty to consult when defendant entered a guilty plea, there was no basis for an appeal, and an appeal would have jeopardized defendant's likelihood of receiving a motion for substantial assistance); United States v. Miles, No. 05-658, 2007 WL 218755, at *8-10 (E.D. Pa. Jan. 26, 2007) (stating that when defendant entered a plea agreement waiving his right to appeal or collaterally attack his sentence except on the issue that his sentence exceeded the statutory maximum, counsel knew defendant was sentenced within the statutory maximum, and defendant did not demonstrate any interest in appealing his sentence, counsel had no duty to consult). Therefore, the court will adopt the magistrate judge's report and recommendation as to this claim, and will overrule petitioner's objection to the finding that counsel did not render ineffective assistance of counsel in failing to note an appeal.

## B.

In his second objection, petitioner maintains that, because he demonstrated that he was incarcerated and counsel did not respond to inquiries petitioner made concerning his case, he met his burden of showing that he could not have discovered in a timely manner that an appeal had not been filed. The court concurs with the magistrate judge's determination that petitioner's assertion that he believed a direct appeal was pending is simply not credible. Regardless of whether counsel responded to petitioner's two letters that referred to petitioner's meeting with federal agents, the fact remains that counsel arranged the meeting, and counsel's efforts to arrange this meeting are reflected in his letters of May 9 and 11, 2006. Significantly, petitioner's letters to counsel make no reference to an appeal, but are quite clearly focused on meeting with federal agents in pursuit of earning a substantial assistance motion. Furthermore, the record reflects that although petitioner had access to counsel, and the ability to communicate with counsel through the U.S. Mail and collect calls by telephone, petitioner made no inquiries about an appeal by those means. Given the availability of communication with counsel, the court agrees with the magistrate judge that it is not reasonable to believe that, having requested an appeal, petitioner would wait idly without placing any inquiries with counsel regarding that appeal, particularly in light of petitioner's alacrity in communicating with counsel regarding his meeting with federal agents in pursuit of a substantial assistance motion. Moreover, as the court has already observed, there is no reason to believe that a reasonable defendant in petitioner's circumstances would have wanted to appeal, and petitioner did not demonstrate any interest in appealing, which simply underscores the absence of any evidence supporting his allegation that he believed an appeal was pending. Accordingly, the court will adopt the magistrate judge's report and recommendation as to this claim, and will overrule petitioner's objection to the finding

16

that petitioner could have discovered, through the exercise of due diligence, that no appeal had been lodged.

### III.

Based on its <u>de novo</u> review of respondent's motion to dismiss, the report and recommendation of United States Magistrate Judge B. Waugh Crigler, the evidentiary hearing testimony and exhibits entered therein, the transcripts of petitioner's sentencing and guilty plea hearings, and petitioner's guilty plea, the court will grant respondent's motion to dismiss, overruling petitioner's objections. Petitioner has failed to establish any credible evidence suggesting that counsel provided constitutionally deficient assistance in failing to note an appeal.[5] Accordingly, the court will grant respondent's motion to dismiss, and petitioner's motion for relief, pursuant to 28 U.S.C. § 2255, will be dismissed in its entirety. An appropriate order will be entered this day.

The Clerk of the Court is hereby directed to send copies of this memorandum opinion and the accompanying order to petitioner and all counsel of record.

ENTER: This 20th day of June, 2008.

United States District Judge

---

[5] Having reviewed the record as supplemented by the magistrate judge's report and recommendation and the exhibits received at the evidentiary hearing of April 29, 2008, the court concludes that Sanchez's motion to vacate, set aside, or correct sentence is clearly untimely under 28 U.S.C. § 2255, para. 6, subsection (1), since it was not filed within one year of the date on which Sanchez's judgment of conviction became final, and Sanchez has not alleged any facts to support the court's reliance on subsections (2) or (3). Moreover, as the preceding analysis demonstrates, his motion is not timely under subsection (4), given the court's determination that petitioner did not request counsel to file a direct appeal, and that, through the exercise of due diligence, Sanchez could have discovered sometime within a year of the date upon which his § 2255 motion was filed that counsel had not filed an appeal. Since Sanchez did not appeal his conviction or sentence, the judgment became final on May 19, 2006, the date on which his time to appeal expired. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. App. P. 4(b) and 26(a). It is undisputed that the judgment in petitioner's direct appeal was entered on May 5, 2006, and became final on May 19, 2006, and that the instant petition was executed on August 31, 2007, more than one year from entry of judgment.

17